## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**SAMUEL L. PACE,**

          **Petitioner,**

**vs.**                                **Civil No.  12-cv-1272-DRH-CJP**

**WARDEN RANDY PFISTER,**

          **Respondent.**


## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

In 1997, a jury in Jersey County, Illinois, convicted Samuel L. Pace of first degree murder.  He filed a petition for habeas relief pursuant to 28 U.S.C. § 2254 (Doc. 1), raising the following grounds:

1.    Trial counsel was ineffective in the following respects:

    a)    failing to file a motion to suppress petitioner's statement to the police;

    b)    failing to seek the exclusion of semen evidence;

    c)    failing to object to the state's use of prior inconsistent statements of witnesses;

    d)    failing to object to hearsay testimony from the state's DNA expert;

    e)    forcing petitioner to testify against his will.

2.    Petitioner was not present at critical stages of the trial, including hearings on what evidence and photographs would be allowed to go to the jury, "stipulation hearings," jury instruction conference, and a conference to answer questions from the jury.

3.    Petitioner's sentence was enhanced using facts that were not found by the jury, and a sentence of natural life was imposed to punish petitioner for refusing a plea offer and going to trial.

4.    The state knowingly presented false testimony from Sheriff Yocom at a suppression hearing.

5.    Counsel on direct appeal was ineffective in failing to raise the following arguments:

    a)    Sheriff Yocom gave false testimony at the suppression hearing;

    b)    petitioner was illegally arrested without a warrant;

    c)    police illegally entered petitioner's home without a warrant;

    d)    petitioner's sentence was unconstitutional because the jury did not find the facts that were used to enhance his sentence.

6.    The warrantless arrest and search of petitioner's home violated the Fourth Amendment.


## I.    Relevant Facts

This summary of the facts is derived from the detailed description by the Appellate Court of Illinois, Fourth District, in its Rule 23 Order affirming petitioner's conviction on direct appeal.   A copy of the Rule 23 Order is attached to Doc. 20 as Exhibit A.   The state court's factual findings are presumed to be correct unless rebutted by clear and convincing evidence, which petitioner has not done.  28 U.S.C. § 2254(e).

On April 17, 1996, Samuel Pace was on probation; he was required to wear an electronic monitoring device and was prohibited from leaving his home after 6:00 p.m.  In the late afternoon, petitioner's brother Roger Pace and his

wife went to petitioner's home.  Samuel Pace was wearing blue jeans and a Harley-Davidson t-shirt.  Madge Crader, who was petitioner's cousin, arrived shortly thereafter with beer.  Roger Pace and his wife left at around 6:00 p.m. At that time, Samuel Pace and Madge Crader were intoxicated and were drinking beer.

At about 7:00 p.m., Samuel Pace called Roger Pace and asked him to return to the house, but Roger Pace did not go.  Kenneth Pace, another brother, testified that Samuel Pace called him the same evening, but he did not remember the time or the substance of the call.  However, he acknowledged that he had told the grand jury that Samuel Pace called him at around 6:15 p.m. and asked him to help dispose of Madge Crader's body.

A third brother, Jeffrey Pace, testified that Samuel Pace called him in the early evening on April 17, 1996, and told him that Crader's body was in the garage.  Jeffrey Pace went to the house and saw Crader's body in the garage. Jeffrey Pace denied that Samuel Pace admitted killing Crader.  However, he acknowledged that he had told the grand jury that Samuel Pace admitted killing Crader.

Sheriff Yocom testified that Jeffrey Pace called him at around 11:00 p.m. on that same night.  The sheriff testified that Jeffrey Pace told him that defendant had killed Madge Crader and her body was in the garage.  Sheriff Yocom and other officers arrived at the house about thirty minutes later.  They did not have an arrest warrant or search warrant.  They found Samuel Pace wearing only a pair of shorts and sandals.  He had a cut on his left hand and

there was blood on his hands, back, ankle, right big toe, right palm and sandal.   Samuel Pace was arrested and handcuffed.  An officer noticed a set of keys and asked Pace what locks they opened.  Pace said that the keys opened a padlock on the garage.  The officer then unlocked the garage and found Madge Crader's body.  She was only partially-clothed and her shoes were missing. The officer also found a ballpeen hammer in the kitchen sink which appeared to have blood and hair on it.

After petitioner was taken to the jail, Sheriff Yocom and officers returned to the house with a search warrant.  They found a bloody knife and sledgehammer in the garage near the body, bloodstains on the couch and clothes dryer, and blood spatters in the garage.  They also found a pair of blue jeans, a Harley-Davidson t-shirt and gym shoes in the washing machine, and metal hooks and eyelets in a wood burning stove.  The hooks and eyelets matched the hooks and eyelets on the shoes that Madge Crader was wearing that day.

Petitioner testified at trial.  He denied killing Madge Crader.  He said that Crader had gone to the garage to get a pack of cigarettes.  He stayed in the kitchen to cook frozen sausage patties.  He cut his hand while attempting to separate the frozen patties.  He put a paper towel on the cut to stop the bleeding, and returned to the living room to drink his beer.  He then saw someone run out of his garage.  When Madge Crader did not come back, he went into the garage and found her body.  Samuel Pace did not call the police because he was afraid that they would think that he killed Crader.  Instead, he

called his brother Kenneth, who refused to help him move the body.  He then called his brother Jeffrey, who came to the house and saw the body.  After Jeffrey left, he locked the garage and fell asleep on the couch.  When he awoke, officers were in his house.

A pathologist testified that Crader died from blunt trauma to the head, and her throat was slashed.  Semen was found on the body.  However, this meant only that Crader had sex, and not that a sexual assault had taken place.

A forensic scientist testified that Crader's blood was on the sledgehammer, knife, ballpeen hammer and Samuel Pace's right big toe.  He found blood on the clothes that were recovered from the washing machine.

Tabitha Marcacci, a forensic biologist, conducted DNA testing.  She testified that blood from both Samuel Pace and Madge Crowder was present on the sledgehammer handle and the garage wall.

## II.   <u>Appeal and Postconviction Petition</u>

On direct appeal, Pace raised the following points:

1.   Trial counsel was ineffective in the following respects:

    a)   failing to move to suppress his statement to the police about his keys;

    b)   failing to object to evidence about the presence of semen where there was no evidence connecting the semen to petitioner;

    c)   failing to object to the use of his brothers' prior grand jury statements as substantive evidence; and

    d)   failing to object to hearsay testimony by the DNA expert.

2.     Petitioner was denied his right to be present during the jury
       instruction conference,

*See* Doc. 20, Ex. D, Petitioner's Brief on Direct Appeal.

After his conviction was affirmed, petitioner filed a Petition for Leave to
Appeal which raised all of the above points.  Doc. 20, Ex. G.  The Supreme
Court denied the PLA.  Doc. 20, Ex. H.

Petitioner filed a pro se postconviction petition which raised a number of
issues.  Counsel was appointed to represent him.  Counsel filed a "petition for
voluntary dismissal without prejudice," seeking leave to dismiss because
counsel was unable to identify a colorable issue.  The petition was dismissed in
June, 2007.  Pace, acting pro se, later sought to have the petition reinstated.
When the trial court refused, he successfully appealed that decision.   The
Appellate Court remanded for further proceedings.  *People v. Pace,* 899 N.E.2d
610 (Ill.App. 4 Dist. 2008).

Appointed counsel then filed an amended postconviction petition and a
second amended petition.  The second amended petition was dismissed.  On
appeal, appointed counsel filed a motion for leave to withdraw under
*Pennsylvania v. Finley*, 107 S. Ct. 1990 (1987).  Doc. 20. Ex. L.  Petitioner filed
two objections to the motion, Doc. 20, Ex. M & N.

The Appellate Court noted that the second amended postconviction
petition raised only one claim that the trial court was required to consider, that
is, ineffectiveness of appellate counsel.  Petitioner's claim of ineffectiveness
related to counsel's failure to argue that Sheriff Yocom claimed that he looked

through the garage window and saw the body, which was inconsistent with other testimony that the garage windows were covered in black plastic. Petitioner argued that, had counsel raised this argument, the Appellate Court would have decided that the trial court erred in denying his motion to suppress.  Doc. 20, Ex. B, Rule 23 Order on Postconviction Petition.

The pro se PLA raised the ineffectiveness of appellate counsel with regard to the motion to suppress.  Doc. 20, Ex. P.

The Supreme Court denied the PLA on November 28, 2012.  Ex. Q.  The § 2254 petition was filed in this Court on December 17, 2012, and is timely.

### III.    Law Applicable to § 2254 Petition

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as the AEDPA.  "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 122 S.Ct. 1843, 1849 (2002).

Habeas is *not* yet another round of appellate review.   28 U.S.C. § 2254(d) restricts habeas relief to cases wherein the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases." *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012), citing *Williams v. Taylor*, 120 S. Ct. 1495, (2000). A state court decision is an "unreasonable application of" clearly established law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* The scope of federal review of state court decisions on habeas is "strictly limited" by 28 U.S.C. § 2254(d)(1). *Jackson v. Frank*, 348 F.3d 658, 661 (7th Cir. 2003). The unreasonable application standard is "a difficult standard to meet." *Id.* at 662. Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, the state court application must be "something like lying well outside the boundaries of permissible differences of opinion." *Id.* at 662 (internal citation omitted).

## IV.    <u>Timeliness, Exhaustion and Procedural Default</u>

Respondent concedes that the petition was timely filed and that petitioner has exhausted state remedies. He contends that some of petitioner's grounds are procedurally defaulted.

A habeas petitioner must clear two procedural hurdles before the Court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default. *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995). Before seeking habeas relief, a petitioner is required to bring his claim(s)

through "one complete round of the State's established appellate review process" because "the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728 (1999), *see also* 28 U.S.C. § 2254(c).  Under the Illinois two-tiered appeals process, petitioners such as Pace must fully present their claims not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review in cases such as this one.  *Id.* at 843-846.


## V.   <u>Analysis</u>

### 1.   **Procedurally Defaulted Claims**

The claim set forth in ground 1(e), that trial counsel was ineffective in forcing petitioner to testify, is procedurally defaulted.  In order to preserve a claim of ineffective assistance for habeas review, petitioner must present "the specific acts or omissions of counsel" that give rise to the claim.  *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009).   A habeas petitioner is required to present both the facts and the law on which he relies, and "failure to alert the state court to a complaint about one aspect of counsel's assistance will lead to a procedural default." *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007). While petitioner did raise ineffective assistance of counsel in his direct appeal, he did not claim that trial counsel forced him to testify.  Similarly, the claim set forth in 5(d), that appellate counsel was ineffective in failing to argue that

petitioner's sentence was enhanced based on facts found by the judge, was not raised in state court and is also procedurally defaulted.

Ground 2 is procedurally defaulted to the extent that it alleges that petitioner was not present at hearings on what evidence and photographs would be allowed to go to the jury, "stipulation hearings," and a conference regarding questions from the jury.   In state court, Pace raised only his exclusion from the jury instruction conference.   Ground 3 is procedurally defaulted to the extent that it alleges that a life sentence was imposed to punish petitioner for refusing a plea offer.   That claim was not presented for one full round of review in state court.

Ground 4, that the state knowingly presented false testimony from Sheriff Yocom at a suppression hearing, is also procedurally defaulted.  A claim that the state knowingly presented false testimony raises a claim under *Napue v. Illinois*, 79 S. Ct. 1173 (1959).  Petitioner did not make this substantive claim in state court and did not cite *Napue* or any case relying on *Napue* in state court.  A habeas petitioner must "fairly present" the constitutional basis of his argument at each step of the state process.  This requirement is not met if the state court judge must go outside the "four corners" of petitioner's pleadings to understand the nature and basis of his argument.  *Lockheart v. Hulick*, 443 F.3d 927, 929 (7th Cir. 2006), citing *Baldwin v. Reese*, 124 S.Ct. 1237 (2004). Fair presentment requires presenting both the operative facts and the controlling legal principles to the state courts.   *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992).

Petitioner has not demonstrated that there was cause for his procedural default. And, he has not raised a claim of actual innocence sufficient to overcome his procedural default. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013).

**2.    Ineffective Assistance of Counsel**

Pace did adequately present four aspects of trial counsel's performance for one full round of state court review. This claim was considered by the state court on direct appeal.

A claim of ineffective assistance of counsel must be analyzed under *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Analysis under *Strickland* and on habeas review under § 2254 are both highly deferential. Where, as here, both apply, the review is "doubly" deferential. *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).

In order to show ineffective assistance of counsel under *Strickland*, a petitioner must demonstrate (1) that counsel's performance "fell below an objective standard of reasonableness" ("the performance prong"), and (2) "that the deficient performance prejudiced the defense" ("the prejudice prong"). *Strickland*, 104 S. Ct. 2066-2067. In order to be entitled to habeas relief, the petitioner must satisfy both prongs of the *Strickland* analysis. However, there is no mandatory order for the analysis, and a habeas court is not required to address both prongs if the petitioner has failed to make a sufficient showing on one. *Id.* at 2069.

Under *Strickland's* performance prong, a court enquires into "the objective reasonableness of counsel's performance." *Harrington*, 131 S.Ct. at 790. "*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'" *Id.* at 791. There is a strong presumption of adequate assistance and the exercise of reasonable professional judgment to avoid the temptation to second-guess counsel's assistance. *Id.* at 789. Indeed, a petitioner's right to effective assistance of counsel is violated only when counsel's conduct, in light of all the circumstances, "[was] outside the wide range of professionally competent assistance." *Strickland,* 104 S. Ct. at 2066.

With respect to prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 104 S. Ct. at 2068. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 792. Ultimately, "[t]he focus of the *Strickland* test for prejudice . . . is not simply whether the outcome would have been different; rather, counsel's shortcomings must render the proceeding fundamentally unfair or unreliable." *Gray v. Hardy*, 598 F.3d 324, 331 (7th Cir. 2010).

On habeas review, the federal court assesses the decision of the last state court to rule on the merits of the claim. *Simpson v. Battaglia*, 458 F.3d 585, 592 (7th Cir. 2006). Here, that is the decision of the Illinois Appellate Court affirming his conviction on direct appeal.

The Appellate Court correctly identified *Strickland* as the applicable Supreme Court precedent regarding claims of ineffective assistance, and recognized that the *Strickland* two-pronged test requires a showing of both deficient performance by counsel and resulting prejudice.  The state court also correctly recognized that petitioner must overcome the strong presumption that counsel's actions constituted sound trial strategy.  Ex. A, p. 7.

The state court held that counsel was not ineffective in failing to object to the evidence that petitioner told the police that the keys opened the garage because his statement did not prejudice his defense.  The court noted that the sheriff and other officers went to petitioner's home because Jeffrey Pace had told the sheriff that petitioner admitted killing Crader and Jeffrey Pace had seen her body in the garage.  The court reasoned that the officers were justified in executing a warrantless search of the garage under the emergency exception to the general warrant requirement and that petitioner's statement about his keys was "inconsequential."  Ex. A, p. 11.   The court found that counsel's failure to object to the evidence of semen was harmless in view of the "overwhelming evidence" against Pace.  Ex. A, p. 13.  The court also found that the failure to object to the use of the witnesses' grand jury statements was not error because those statements were properly admitted as substantive evidence.  Ex. A, pp. 15-16. Lastly, the court determined that the failure to object to hearsay testimony by the states' DNA expert was a matter of trial strategy and did not affect the outcome of the trial.  Ex. A, p. 17.

This Court is mindful that "the bar for establishing the unreasonableness

of a state court's application of *Strickland* 'is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus.'" *Jones v. Brown*, 756 F.3d 1000, 1007 (7th Cir. 2014), citing *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009).  Petitioner does not come close to clearing the bar here.

The state court reasonably concluded that counsel's failure to file a motion to suppress petitioner's statement about his keys and to object to the semen evidence were not prejudicial.  Petitioner argued in state court that, without his statement that the keys unlocked the garage, the police would not have been able to conduct a warrantless search of the garage.  However, the police already knew that the garage belonged to petitioner and knew that Jeffrey Pace said he saw Madge Crader's body in the garage.  The police arrived at the house about 30 minutes after the call from Jeffrey.  The state court concluded that a motion to suppress the statement would not have resulted in the exclusion of the evidence that the police found Madge's body in the garage. And, in view of the overwhelming evidence, the exclusion of the semen evidence would not have likely produced a different outcome.

The state court held that the prior inconsistent statements given by Kenneth Pace and Jeffrey Pace to the grand jury were admissible under 725 ILCS 5/115-10.1.  Petitioner has not demonstrated that this conclusion was incorrect.  Therefore, he has not demonstrated that counsel was ineffective for failing to object to the admission of the evidence.  "[C]ounsel cannot be faulted for failing to register a futile objection."  *Benefiel v. Davis*, 357 F.3d 655, 664 (7th Cir. 2004).

Lastly, the state court's conclusion that counsel was not ineffective for failing to object to the hearsay testimony by the DNA expert was not unreasonable.   The testimony in question is the expert's statement that her work was supervised by a Dr. Fish, and that she would not have been allowed to testify if Dr. Fish did not approve of her work.   On cross-examination, counsel highlighted the fact that Dr. Fish merely signed off on the expert's work as each step was completed, but did not actually check her work.   He also pointed out the expert's limited experience in performing DNA analysis and in testifying as an expert witness.   Thus, the court reasoned, counsel pursued a reasonable strategy of attempting to cast doubt on the expert's qualifications and testimony, along with demonstrating that Dr. Fish did not, in reality, check the witness' work.

Petitioner has also failed to demonstrate that the state court unreasonably applied *Strickland* in assessing the performance of appellate counsel.   The Appellate Court considered appellate counsel's performance on the postconviction petition.   *See* Doc. 20, Ex. B.   The state court concluded that appellate counsel was not ineffective in failing to appeal from the denial of the motion to suppress because the issue had no merit.   Petitioner claimed that counsel should have argued that Sheriff Yocom falsely testified that he was able to see Madge Crader's body through the garage window.   This statement was contradicted by the reports of other officers and the by sheriff's grand jury testimony.   He argued that the sheriff's inconsistent testimony renders the officers' entry into his garage and his arrest unlawful.   The state court

concluded, however, that the officers' conduct in entering the garage was reasonable under the circumstances, regardless of whether they could see Madge's body through the window.  Ex. B, pp. 8-9.

Petitioner's argument in state court and here fails to acknowledge the powerful evidence of the phone call from Jeffrey Pace to Sheriff Yocom.  Jeffrey Pace told Sheriff Yocom that (1) petitioner admitted killing Madge Crader, (2) petitioner asked Jeffrey to help dispose of the body, and (3) Jeffrey had seen the body of a woman whose throat had been cut on the floor of the garage.  The state court determined that the entry into the garage was justified by the emergency exception to the requirement of a search warrant regardless of whether Sheriff Yocom was able to see the body through the garage window.  This is a reasonable conclusion.  Appellate counsel cannot be faulted for failing to raise a non-meritorious argument.  *Martin v. Evans*, 384 F. 3d 848, 851-852 (7th Cir. 2004).

"It is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'"  *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013), citing *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).   Here, the state court's decisions regarding petitioner's claims of ineffective assistance of trial and appellate counsel are not an application of federal law that is outside the boundaries of permissible differences of opinion.  *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003).

3.      **Absence from Jury Instruction Conference**

This issue was considered by the Appellate Court on direct appeal.  The court correctly concluded that petitioner's right to be present at all critical phases of trial was not violated by his absence from the jury instruction conference in the circumstances of this case.  Ex. A, pp. 18-19.

Pursuant to 28 U.S.C. § 2254(d)(1), petitioner is entitled to habeas relief only if he establishes that the Appellate Court's decision was contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court.  The analysis under 28 U.S.C. § 2254(d) looks to the law that was clearly established by Supreme Court precedent at the time of the state court's decision. *Wiggins v. Smith*, 123 S. Ct. 2527, 2534 (2003).

The Supreme Court has held that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 107 S. Ct. 2658, 2667 (1987).   However, the Supreme Court has not held that either the Sixth Amendment or the due process clause confer a right to be present at a jury instruction conference.  The rule in federal court is that a defendant's presence is not required at a proceeding which "involves only a conference or hearing on a question of law."  Fed. R. Crim P. 43(b)(3).  Because clearly established federal law as declared by the Supreme Court at the time of the state court's decision did not require a defendant's presence at a jury instruction conference, Pace's point must be denied.

4.      ***Apprendi* claim**

Petitioner argues in his third ground that his sentence was unconstitutionally enhanced based on factors found by the judge, and not by the jury.  This argument presents a claim under *Apprendi v. New Jersey*, 120 S.Ct. 2348 (2000).   However, petitioner was convicted before *Apprendi* was decided.   *Apprendi* does not apply retroactively to cases on collateral review. *Curtis v. United States,* 294 F.3d 841 (7th Cir. 2002).

**5.**     **Violation of the Fourth Amendment**

As his final ground for habeas relief, petitioner argues that his warrantless arrest and the warrantless search of his home violate the Fourth Amendment.

This issue is procedurally defaulted.   Petitioner did not raise the trial court's denial of his motion to suppress on direct appeal.   In his postconviction petition, petitioner argued that appellate counsel was ineffective in failing to raise the issue, but, as was discussed above, the state court reasonably concluded that counsel was not ineffective because this issue had no merit.

Even if the argument were not defaulted, petitioner's Fourth Amendment argument would not support habeas relief.   "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."   *Stone v. Powell*, 96 S. Ct. 3037, 3046 (1976).   In determining whether an opportunity for full and fair litigation was provided, the habeas court does not focus on the correctness of the state

court's decision, but rather on whether the state courts adequately addressed the Fourth Amendment claim. *Cabrera v. Hinsley*, 324 F.3d 527, 530-32 (7th Cir. 2003). A petitioner has received a full and fair hearing if "the state court heard the claim, looked at the right body of case law, and rendered an intellectually honest decision." *Monroe v. Davis*, 712 F.3d 1106, 1114 (7th Cir. 2013).

Here, petitioner does not contend that the state courts did not give him an opportunity for full and fair litigation of his Fourth Amendment claim. Rather, his argument is that the state court reached the wrong decision on his motion to suppress. That is not enough for habeas relief:

> It takes an "egregious error" to imply that the state judges have closed their ears and minds to argument—and it is the latter circumstance, not the error itself, that would justify relief under *Stone*. Even an "egregious error" thus is not enough to support a writ of habeas corpus (that's what it means to say that the exclusionary rule does not apply on collateral attack); a blunder, no matter how obvious, matters only in conjunction with other circumstances that imply refusal by the state judiciary to take seriously its obligation to adjudicate claims under the fourth amendment.

*Hampton v. Wyant*, 296 F.3d 560, 564 (7th Cir. 2002).

The trial court held a hearing on petitioner's motion to suppress. Doc. 20, Ex. W. The trial court denied the motion because it found that the arrest and entry into the house and garage were justified under the emergency exception to the general warrant requirement. In rejecting petitioner's claim of ineffective assistance of counsel, the Appellate Court determined that the trial court's decision on the motion to suppress had been correct. The Appellate Court cited the correct body of law, i.e., *Mincey v. Arizona*, 98 S. Ct. 2408

(1978), and Illinois cases applying *Mincey*. There is simply no indication here that the state courts failed to give petitioner an opportunity for full and fair litigation of his Fourth Amendment claim.

## VI.    Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

In order for a certificate of appealability to issue, petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000). Where a petition is dismissed on procedural grounds without reaching the underlying constitutional issue, the petitioner must show both that reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

Here, no reasonable jurist would find it debatable whether this Court's rulings on procedural default or on the substantive issues were correct. Accordingly, the Court denies a certificate of appealability.

## VII.    Conclusion

Samuel L. Pace's petition for habeas relief under 28 U.S.C. § 2254 **(Doc. 1)** is **DENIED**.  This cause of action is **DISMISSED WITH PREJUDICE**.   The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 7th day of October, 2014.

Digitally signed by David R. Herndon
Date: 2014.10.07 10:59:27 -05'00'

**District Judge**
**United States District Court**